UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VINAY LIKHITE, Personal Representative
of the Estate of KEITH LIKHITE,

      Plaintiff,

vs.                                    No. CIV 06-0227 LCS/KBM

REHOBOTH MCKINLEY CHRISTIAN
HEALTHCARE SERVICES, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Partial Summary Judgment or, in the Alternative, Leave to Amend, filed on August 28, 2006 (Doc. 26) and Plaintiff's Motion to Strike Affidavit of Mark C. Meiring, filed on October 2, 2006. (Doc. 35.) The Court, acting upon consent and designation pursuant to 28 U.S.C. § 636(c), and having reviewed the motions and considered the submissions of counsel, relevant authorities, and being otherwise fully advised, finds that the motion to strike (Doc. 35) should be **GRANTED in part and DENIED AS MOOT in part** and the motion for partial summary judgment (Doc. 26) should be **GRANTED in part and DENIED AS MOOT in part.**

    I.    FACTS

This action arises out of Keith Likhite's ("Likhite") brief visit to a Gallup, New Mexico emergency room and his later suicide. In the early hours of July 24, 2005, Gallup police officer Christopher Dale interviewed Likhite at the Gallup bus station about a possible crime. (*See* Pl.

Ex. 10 at 6:1-10.) During the course of the interview, Officer Dale observed Likhite exhibiting abnormal thought processes. (*See id.* at 8:4-5.) For example, when Officer Dale asked Likhite where the crime took place, Likhite responded, "My brain is the crime." (*Id.* at 7:20-25, 8:1.) Consequently, Officer Dale escorted Likhite to the Rehoboth McKinley Christian Healthcare Services Emergency Department ("ER") for a psychiatric consult. (*See* Pl. Exs. 7, 10 at 8:17-21.)

Defendant staffs and operates the ER. (*See* Pl. Exs. 2; 14 at 10:1-25, 11:1-14, 20:1-19.) The state of New Mexico requires Defendant to provide behavioral healthcare services, and Defendant has a policy in place ensuring that "[a]ll clients will have access to emergency behavioral health services 24 hours a day, seven days a week." (Pl. Exs. 1; 2.) Defendant entered into a Memorandum of Understanding ("MOU") with Western New Mexico Counseling Services ("Western"), another entity obligated to provide behavioral healthcare services, "to pool staff resources in a cooperative effort to comply with" state requirements. (Pl. Ex. 1; *see also* Pl. Ex. 6.) Mr. DeMoss, Western's Clinical Director, and Ms. Stifler, Defendant's Director of Behavioral Health Services, signed the MOU. (Pl. Ex. 1.)

The MOU contains the following agreements: (1) the agencies "will develop a combined schedule to provide on-call emergency coverage"; (2) the agencies will split coverage of the telephone crisis line; (3) Western will reimburse Defendant "at the rate of $15.00 per day for each day a" Western staff member is not on call; (4) the agencies will pay their "own costs for reimbursing employees for the emergency service;" (5) staff from both agencies will meet "for training and debriefing"; (6) Defendant will credential Western employees who work in the ER; (7) "[r]ecords generated in the [ER] are the property of" Defendant; and (8) Western "will arrange training on sexual assault counseling for all crisis clinicians . . . ." (*Id.*) Each entity pays

2

its own clinicians for services performed in the ER.  (*See* Doc. 41, Dep. of Paula Stifler at 21:1-4 [hereinafter Def. Ex. G].)  This MOU, dated April 27, 2000, was in place at the time of Likhite's ER visit.  (Pl. Ex. 1.)

Mr. Richard Jordan, a nurse employed by Defendant, was the first person to see Likhite in the ER for evaluation and triage.  (*See* Pl. Ex. 11 at 9:6-24, 15:1-4.)  Mr. Jordan took Likhite to a room and recorded his medical history and current symptoms.  (*Id.* at 15:8-14, 16:6-13.)  Mr. Jordan testified that Likhite disclosed "he was hearing voices telling him to molest little girls . . . [and that] he wanted to get some help for that."  (*Id.* at 16:16-19.)  Dr. Dennis Bethel, M.D., an emergency room physician employed by Defendant, saw Likhite after Mr. Jordan finished.  (*See* Pl. Ex. 9 at 4:5-10, 13:4-9.)  As an ER physician, Defendant's policy dictated that Dr. Bethel was "responsible for the degree of evaluation and treatment provided to" Likhite.[1]  (Pl. Ex. 8.)  After examining Likhite, Dr. Bethel diagnosed Likhite as having schizophrenia and psychosis.  (Pl. Ex. 9 at 63:14-15.)  Dr. Bethel decided to ask for a psych referral because Likhite had given "a vague mention to suicidal thoughts[,]" was schizophrenic, and "had been hearing voices . . . .".  (*Id.* at 25:6-15, 26:6-10.)  Dr. Bethel asked the ER staff to contact the on-call behavioral health services clinician.  (*See* Pl. Ex. 11 at 23:15-17.)  The ER staff member contacted Nancy Yates-Eamick, a Western employee who was scheduled to be on call on July 24, 2005.  (*See* Pl. Ex. 6.)

When Ms. Yates-Eamick arrived at the ER, she spoke briefly with a nurse and reviewed Likhite's file.  (Pl. Ex. 4 at 36:16-25, 37:1-5.)  Ms. Yates-Eamick testified that before she examined Likhite she spoke with Dr. Bethel, who explained that Likhite had a fairly flat affect,

---

[1] Defendant argues that this policy has not been adopted by Western, nor does the policy allow Defendant to control how Western's employees function.  (Doc. 32 at 7.)  I find it unnecessary to address those contentions for purposes of this opinion.

3

was hearing voices, was resistant to being at the hospital, and had talked about suicide.[2] (*Id.* at 37:7, 42:7-25, 43:1-13.) After speaking with Dr. Bethel, Ms. Yates-Eamick evaluated Likhite "to determine whether or not he was a risk of harming himself or others . . . ." (*Id.* at 44:11-14.) Dr. Bethel did not limit the scope of Ms. Yates-Eamick's evaluation, and according to Ms. Stifler, Ms. Yates-Eamick's evaluation was not controlled or limited by any of Defendant's policies. (*See* Pl. Ex. 9 at 28:11-13; *see also* Def. Ex. G at 72:24-25; 73:1-25; 74:1-25.) During the course of the evaluation, Ms. Yates-Eamick introduced herself, explained that she was "different from the other staff [Likhite had] visited with[,]" and told him that she would be asking him personal information. (Def. Ex. E at 51:2-6.) She also testified that Likhite assured her he had medication, Geodon, for his mental illness and would take it. (Pl. Ex. 4 at 71:16-17.) She ultimately reported back to Dr. Bethel that there was not "enough objective evidence to hold [Likhite] for an involuntary commitment." (*Id.* at 71:3-6.) She did ask Dr. Bethel to speak with Likhite and encourage him to stay at the hospital to make sure he took the medication. (*Id.* at 71:8-11.) Dr. Bethel testified that Ms. Yates-Eamick informed him Likhite had the Geodon already, and Dr. Bethel agreed that Likhite should take the medication. (Pl. Ex. 9 at 30:22-25, 31:1-2, 42:24-25, 43:1-6.) Ms. Yates-Eamick heard Dr. Bethel ask Likhite if he would take some of his medicine in the doctor's presence, but Likhite refused, saying he had the medicine and would meet with a psychiatrist in California. (Pl. Ex. 4 at 90:5-12.) Likhite refused to allow the staff to contact anyone on his behalf, and eventually, Ms. Yates-Eamick arranged for the police to escort Likhite

---

[2] Defendant contends Dr. Bethel's testimony was that Likhite "did not state that he was suicidal at the time he was being seen at the ER on July 24th." (Doc. 32 at 9.) Dr. Bethel's actual testimony was that Likhite "had said that in the past *or sometime* he had thought about – he had suicidal thoughts . . . ." (Pl. Ex. 9 at 60:16-17 (emphasis added).) While I do not necessarily agree with Defendant's characterization of the testimony, this matter of semantics is not of importance to this opinion.

back to the bus station. (*Id.* at 70:8-13, 90:5-12, 91:2-3.) Later that morning, Likhite committed suicide by throwing himself under a train. (Doc. 27 at 2.)

## II.   MOTION TO STRIKE

In considering a motion for summary judgment, "courts should disregard inadmissible hearsay statements contained in affidavits, as those statements could not be presented at trial in any form." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Mr. Meiering's affidavit smacks of hearsay, inasmuch as he sets forth Ms. Stifler's testimony for the purpose of proving the truth of what Ms. Stifler said. (*See* Def. Ex. F.) In response to Plaintiff's motion to strike, however, Defendant attaches the deposition Mr. Meiering refers to in his affidavit. (Doc. 41.) Because Rule 56 allows me to consider the "pleadings, depositions, answers to interrogatories, and admissions *on file*, together with the affidavits," I will take Ms. Stifler's deposition – which is now on file with the Court – under consideration in rendering my opinion on Plaintiff's motion for partial summary judgment. FED. R. CIV. P. 56(c) (emphasis added). Plaintiff's motion to strike is denied as moot with respect to the portion of Mr. Meiering's affidavit dealing with Ms. Stifler's deposition.

Mr. Meiering also draws speculative conclusions based on medical records Plaintiff disclosed in answers to interrogatories and requests for production. (*See* Def. Ex. F at 2-6.) An affidavit submitted by counsel for a party is not the proper vehicle in which to present arguments to support the party's position. "Affidavits are vehicles for the presentation of facts to the Court, not legal arguments. They should be restricted to the statement of facts within the personal knowledge of the affiant. Argument of the facts and the law appropriately should appear in briefs." *E. F. Hutton & Co. v. Brown*, 305 F. Supp. 371, 383 (S.D. Tex. 1969). Affidavits may

be supported by documents produced in discovery, but reading through those documents does not bestow on counsel the personal knowledge necessary to swear to conclusions drawn from the information contained therein.  *See id.*  I will grant Plaintiff's motion to strike in part and disregard the portions of Mr. Meiering's affidavit based on the medical records.[3]  *See id.*

### III.     MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A.     Summary Judgment Standard.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Generally, the Movant bears the initial burden of establishing that no genuine issue exists as to any material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citation omitted).  When applying this standard, the Court examines the record and reasonable inferences "in the light most favorable to the nonmoving party."  *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  The Movant's initial burden may be discharged by showing "there is an absence of evidence to support the non-moving party's case."  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).  Once the Movant meets its burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue for trial on a material matter.  *See Simms*, 165 F.3d at

---

[3] The records themselves will not make any difference in this opinion.

1326 (citation omitted).

**B.     Analysis.**

In this motion for partial summary judgment, Plaintiff asks the Court to find that Defendant is liable for any negligence on the part of Ms. Yates-Eamick, who Plaintiff alleges was acting as Defendant's agent when she evaluated Likhite. (Doc. 27 at 13.) As I explain below, Plaintiff has failed to meet its burden to establish that Ms. Yates-Eamick was acting as Defendant's actual agent. Plaintiff has, however, established that Ms. Yates-Eamick acted as Defendant's apparent agent under the ostensible agency theory. Plaintiff's motion will be granted on this ground; consequently, Plaintiff's motion in the alternative to add Ms. Yates-Eamick and/or Western New Mexico Counseling Services as parties will be denied as moot.

**1.     The Plaintiff Has Not Met Its Burden of Establishing that Ms. Yates-Eamick Acted as Defendant's Actual Agent.**

Plaintiff has failed to meet its burden on the issue of whether Ms. Yates-Eamick was Defendant's actual agent. "'An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation.'" *Madsen v. Scott*, 992 P.2d 268, 270 (N.M. 1999) (quoting UJI 13-401 (1999)). If Ms. Yates-Eamick was acting as Defendant's agent, Defendant could be liable for her negligence if she was acting within the scope of her agency and Defendant had the right to control her work. *See id.* (citing UJI 13-402 (1999)).

Defendant has demonstrated a genuine issue of material fact exists for trial. "The question of agency is normally one of fact and is to be determined from all attendant circumstances, in conjunction with the conduct and the communications of the parties." *Gallegos v. Citizens Ins.*

*Agency*, 779 P.2d 99, 106 (N.M. 1989) (citing *Fryar v. Employers Ins. of Wausau*, 607 P.2d 615, 618 (1980). Plaintiff argues that the MOU is an agreement between Defendant and Western to establish an agency relationship. (Doc. 34 at 10.) Plaintiff also argues that because Dr. Bethel had the right to both decide whether to call Ms. Yates-Eamick and to determine what Likhite's treatment would be, Defendant had control over Ms. Yates-Eamick's activities. (Doc. 27 at 9.) Defendant contends that because the MOU benefitted both Defendant and Western, Plaintiff cannot establish any intent to form an agency relationship. (Doc. 32 at 15-16.) Defendant also argues that it did not control Ms. Yates-Eamick's actions, because there is no evidence that Dr. Bethel dictated how she evaluated Likhite. (*Id.* at 16.) Further, Defendant came forward with evidence tending to show that Defendant did not exert control over Ms. Yates Eamick. (*See* Pl. Ex. 9 at 28:11-13; *see also* Def. Ex. G at 72:24-25; 73:1-25; 74:1-25.) The evidence submitted by Defendant is sufficient to establish that there is a genuine issue for trial, and I will deny the motion for summary judgment inasmuch as it is based on a theory of actual agency.[4]

    **2.    Ms. Yates-Eamick Acted as Defendant's Apparent Agent.**

Plaintiff has established that Ms. Yates-Eamick was acting as Defendant's agent under the doctrine of apparent authority. The New Mexico Court of Appeals has distinguished between the

---

[4] Plaintiff also attempts to argue Defendant is liable for any negligence of Ms. Yates-Eamick because Defendant had a non-delegable duty of care. (Doc. 27 at 9-10.) Plaintiff cites to the Restatement (Second) of Agency § 250, which provides:
> A principal is not liable for physical harm caused by the negligent physical conduct of a non-servant agent during the performance of the principal's business, if he neither intended nor authorized the result nor the manner of performance, unless he was under a duty to have the act performed with due care.

Under this definition, Ms. Yates-Eamick would essentially be classified as an independent contractor. *See* RESTATEMENT (SECOND) OF AGENCY § 250 cmt. a (1958). *See also Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 142 (D.C. Md. 1981). Plaintiff briefly mentions a C.F.R. pertaining to Medicaid providers, but does not cite any other law to support this argument. (Doc. 27 at 9-10 (citing 42 C.F.R. § 482.12).) Because I am granting Plaintiff's motion under the doctrine of apparent authority, it is unnecessary to address this issue now.

8

two theories encompassed within the doctrine of apparent authority. *Houghland v. Grant*, 891 P.2d 563, 568 (N.M. Ct. App. 1995). The first theory, known as ostensible agency, is "predicated on Restatement (Second) of Torts § 429," which provides:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

*Houghland*, 891 P.2d at 568; RESTATEMENT (SECOND) OF TORTS § 429 (1965). The second theory, agency by estoppel, is based on Restatement (Second) of Torts § 267. *Houghland*, 891 P.2d at 568. Agency by estoppel "requires actual reliance upon the representations of the principal[,]" and so has a stricter standard than ostensible agency, which contains only a "reasonable belief element . . . ." *Id.* (citation omitted). Plaintiff does not set forth evidence to establish that Likhite actually relied on any representation by Defendant, so it appears Plaintiff argues under the ostensible agency theory.

As was the case in *Houghland*, Defendant and Western "never expressly created an agency relationship." *Id.* (citing RESTATEMENT (SECOND) OF AGENCY § 1 (1958)). But the real issue here is whether Defendant, "through what it represented or failed to represent to the public, . . . created the impression that" Ms. Yates-Eamick was an agent of Defendant. *Id.* To establish the elements of apparent authority under the doctrine of ostensible agency, plaintiff must demonstrate that: (1) Defendant employed Ms. Yates-Eamick, an independent contractor,[5] to perform certain services for Defendant; and (2) the services were "accepted in the reasonable

---

[5] The Restatement defines an independent contractor as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent." RESTATEMENT (SECOND) OF AGENCY § 2 (1958).

belief that the services [were] being rendered by [Defendant] or by [its] servants . . . ." RESTATEMENT (SECOND) OF TORTS § 429. Defendant has admitted the first element and cited evidence in support of this fact. (*See* Doc. 32 at 16 (Ms. Yates-Eamick "was a classic independent contractor"); *see also* Def. Exs. A; D at 28:11-13; G at 20:20-23, 21:1-4.)

The second element of apparent authority under the doctrine of ostensible agency involves an objective standard; the issue is whether it would have been reasonable to believe that Defendant or its servant rendered the behavioral health services Likhite received in Defendant's emergency room. *See* RESTATEMENT (SECOND) OF TORTS § 429. *See also, e.g.*, *United States v. Musa*, 401 F.3d 1208, 1217 (10th Cir. 2005) ("before [law enforcement officers] may dispense with the knock and announce requirement, . . . the officers [must] hold an objectively reasonable belief that there is an urgent need for immediate action"; "[t]he standard is an objective one") (internal quotation marks and citations omitted); *Shull v. N.M. Potash Corp.*, 802 P.2d 641, 643 (N.M. 1990) ("an objective standard of reasonable belief" should be used to determine whether an employer had good cause to terminate an employee); *Dawley v. La Puerta Architectural Antiques, Inc.*, 62 P.3d 1271, 1275-76 (N.M. App. 2002) (in the context of demonstrating misuse of process, the court applied "an objective standard in reviewing for probable cause in a tort action and determine whether a party's belief was reasonable, based on facts established after a reasonable pre-filing investigation" (internal quotation marks and citation omitted)). Plaintiff has sufficiently established that it would be reasonable to believe that the services were rendered by Defendant.

Likhite went to a hospital operated by Defendant, not to an office run by Western. (*See* Pl. Exs. 2; 14 at 10:1-25, 11:1-14, 20:1-19.) Likhite was triaged by Defendant's nurse and seen

10

by Defendant's physician.  (*See* Pl. Exs. 9 at 4:5-10, 13:4-9; 11 at 9:6-24, 15:1-4.)  Defendant's physician decided to call for a behavioral health consult; Likhite was not given the choice of whether he had a consult or who the provider would be.  (*See* Pl. Exs. 9 at 25:6-15; 11 at 23:15-17.)  As the *Houghland* court explains, the key is that all of these facts existed in the context of an emergency room visit.  *Houghland*, 891 P.2d at 569.  Although the procedural posture in *Houghland* was different than in this case,[6] the court's language was clear:

> When members of the public seek care at a modern hospital emergency room, they reasonably assume that the hospital is responsible for their care. Patients seeking care from a hospital emergency room are particularly not in a position to make inquiries into the contractual relationships between the hospital and its emergency room doctors.  The very nature of a medical emergency dictates that hospitals providing emergency room services be held responsible for the actions of professionals providing such care when the elements of apparent authority are established.

*Houghland*, 891 P.2d at 569 (citations omitted).  The facts established by the parties demonstrate that Ms. Yates-Eamick acted with apparent authority.

Defendant argues that Ms. Yates-Eamick's initial statement to Likhite as well as Likhite's own experience with mental health services contradict a finding that he "justifiably relied" on any alleged representations of Defendant.  (Doc. 32 at 8, 20-24.)  I do not find Defendant's arguments persuasive or relevant.  Ms. Yates-Eamick testified that:

> Typically, I go in, introduce myself, explain to them how I am different from the other staff that they have visited with.  I always tell them that I need to ask them a lot of personal information, and that some of it may be uncomfortable.  And that I

---

[6] In *Houghland*, the plaintiff brought an interlocutory appeal from an order granting summary judgment in defendant's favor. *Houghland*, 891 P.2d at 570. The New Mexico Court of Appeals found that "the district court erred in granting summary judgment[,]" "[b]ecause a jury could reasonably conclude that [defendant] was the employer of [the physician], or held itself out as an emergency care provider thereby inducing patients . . . to rely on [defendant] for emergency care rather than any doctor specifically . . . ." *Id.* The *Houghland* court was not in a position to grant summary judgment in plaintiff's favor, but I believe my opinion is in line with the court's reasoning.

11

will try to be as compassionate as possible.

(Def. Ex. E at 51:2-7.) Taken as a whole, this statement does not distinguish her as a non-employee, and it does nothing to detract from a reasonable belief that her services were rendered as a servant of Defendant.[7] *See* RESTATEMENT (SECOND) OF TORTS § 429. Nor can Defendant seriously argue that Likhite "completely grasped the independent contractor nature of mental health counselors within the behavioral health system[,]" because if Likhite had arrived at the ER on a different day or at a different time, the behavioral health clinician on call may very well have been employed by Defendant rather than Western. (*See* Doc. 32 at 22; Pl. Ex. 6.) Finally, the *Houghland* court clearly differentiated between the ostensible agency theory's "reasonable belief" standard and the agency by estoppel theory's "justifiable reliance" standard. *Houghland*, 891 P.2d at 568. Defendant's argument regarding whether Likhite justifiably relied on any representations is not relevant to this analysis. (Doc. 32 at 20-24.) The facts established by the parties, taken in a light most favorable to Defendant, establish that Ms. Yates-Eamick was acting as Defendant's agent under the ostensible agency theory. There is no *genuine* issue of material fact with respect to the theory's reasonable belief standard. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted). Plaintiff's motion will be granted on this issue.[8]

---

[7] Moreover, the definition of the word staff does not distinguish Ms. Yates-Eamick from Defendant's employees: "[a] group of assistants to a manager, executive, or other person in authority." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1687 (4th ed. 2000) (defining "staffs").

[8] By granting Plaintiff's motion on this issue, I am not deciding whether Defendant's or Ms. Yates-Eamick's actions were in any way negligent, nor am I deciding that Defendant is liable for any of Plaintiff's alleged damages.

### III.  CONCLUSION

Plaintiff's motion to strike is granted in part in that I disregarded the portions of Mr. Meiering's affidavit based on Likhite's old medical records.  The motion to strike is also denied as moot in part, because Defendant's submission of Ms. Stifler's affidavit made the affidavit unnecessary.

After considering all of the evidence and construing all inferences in favor of Defendants, I find that the undisputed facts presented by the parties establish that Ms. Yates-Eamick was acting as Defendant's agent under the doctrine of apparent authority.  Accordingly, I will grant Plaintiff's Motion for Partial Summary Judgment on that issue.  I will, therefore, deny as moot Plaintiff's alternative motion requesting leave to amend the complaint in the event the motion for partial summary judgment is denied.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Strike Affidavit of Mark C. Meiring (Doc. 35) is **GRANTED IN PART and DENIED AS MOOT IN PART;**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment or, in the Alternative, Leave to Amend (Doc. 26) is **GRANTED IN PART inasmuch as I find that Ms. Yates-Eamick acted as Defendant's agent under the doctrine of apparent authority.** The motion is also **DENIED AS MOOT IN PART with respect to Plaintiff's alternative request for leave to amend.**

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

13